POLSTER, District Judge,
concurring in part and dissenting in part.
I concur in that portion of the majority opinion holding that the Immigration Judge’s conclusion that Berishaj does not fall within one of the protected grounds for asylum is not supported by any legal analysis or reasoning. Where I must part company with the majority is its holding that there is substantial evidence to support the IJ’s conclusion that Berishaj has not established that she was persecuted by someone whom the government is unwilling or unable to control. While it is true that the government prosecuted Ademi for publicly assaulting Berishaj after she had endured at least two prior beatings and repeated threats, the facts surrounding Ademi’s trial compel the conclusion that the government was and is unwilling or unable to protect Berishaj from future attack.
There is no dispute about the facts, as the IJ found that Berishaj was “entirely credible.” She testified that Ademi’s trial began with the judge commenting that “every Albanian woman gets hit by the husband.” It was certainly reasonable for Ademi to conclude that his infraction was not a serious one in the eyes of the court, so he tested that assumption. After conceding that he slapped Berishaj in public because she didn’t want to see him anymore and was not interested in their relationship, he told the judge: “I’m serious in getting engaged and marry her and I’ll not stop persuing [sic] seriously about this matter.”[5]
I know what I would have done had a defendant in a similar situation flouted the law in this fashion; I would have responded by imposing a stiff jail sentence, cou *65 pled with a warning about even harsher consequences should there be any further incidents, and I cannot imagine any reasonable judge in any country who would not have responded in the same way to Ademi’s declarations to the court. The fact that the judge presiding over Ademi’s case said nothing whatsoever in response to Ademi’s statements, and then imposed only a fine on Ademi, sent an unmistakable signal to both Ademi and Berishaj that the Kosovo courts would not protect Berishaj from future attacks, and that the Code of Kanun was more potent than Kosovo law.
Ademi’s conduct after his court hearing and conviction provide additional evidence that Ademi, undeterred by his sentence, intends to flout Kosovo law in favor of the dictates of the Code of Kanun and therefore that the government of Kosovo is unable or unwilling to protect Berishaj from private persecution at Ademi’s hands. In the aftermath of Ademi’s conviction, his friends began publicly threatening to kill Berishaj, frequently making such threats to Berishaj personally at her school. Ademi also called Berishaj daily on the telephone, threatening that he was going to rape and kill her. Berishaj justifiably feared for her life at that point, and fled the country, with the help of her mother and an aunt who Uves in Michigan. Additionally, Berishaj testified that she spoke with her parents after fleeing to the United States, and learned that Ademi had publically sworn a blood oath in front of the village elders that he would kill Berishaj. The elders approved Ademi’s blood oath as the only proper way to restore his shamed honor under the Code of Kanun. Critically, Ademi must carry out his blood oath under the Code; until his honor is restored, Ademi cannot Uve in the area, he can’t get married or have a family, or find employment. As recently as two months before the IJ’s hearing, two friends still living in Kosovo told Berishaj that Ademi continued to threaten her life. All of the evidence Berishaj presented compels me to conclude that the government of Kosovo is unable or unwilling to protect Berishaj from persecution at Ademi’s hands.
I am mindful of the deferential standard of review in this case. In accordance with the “substantial evidence” standard, however, I find that Berishaj has met her burden of demonstrating that the Kosovo government is unable or unwilhng to protect her from Ademi, and her evidence compels the conclusion that the IJ’s decision to the contrary is not supported by substantial evidence. Accordingly, I would REVERSE on the issue of private persecution, and REMAND for a determination of whether Berishaj falls within one of the protected grounds for asylum.

. The court document also states that when Ademi slapped Berishaj in the face, he stated, "[You] filthy prostitute, I’ll kill you. I’ll never let you get another man, but me in your life.”